[No. 1455.]

ALEX CORNELIUS *v.* THE STATE.

1. RAPE—INDICTMENT.—The charging part of an indictment for rape is as follows: "That one Alex Cornelius, late of said county, on the fifteenth day of February, one thousand eight hundred and eighty-two, and in said county and State of Texas, did, then and there, in and upon one Mattie Clark, a female, violently and feloniously make an assault, and her the said Mattie Clark then and there violently, and by force and threats, and against her will, did ravish and carnally know, contrary to law," etc. *Held*, sufficient to charge the offense.

2. SAME—EVIDENCE.—See evidence held sufficient to support a conviction for rape.

APPEAL from the District Court of Smith. Tried below before the Hon. J. C. Robertson.

The conviction was for the rape of one Mattie Clark, and the punishment assessed was a term of fifteen years in the State penitentiary.

Mattie Clark deposed, for the State, that she was a female, fourteen years old, and lived with her parents on C. C. Woods's place, in Smith county, Texas, about ten miles distant from the city of Tyler. She had known the defendant from her earliest childhood. In February of 1882, before the finding of this indictment, she started from home at about twelve o'clock m., of a day not remembered, to take dinner to her father, who was at work in a field about a mile distant. The gin house, at which the defendant was at work, stood at a point on the road about equidistant between the field and the house. Passing, en route to the field, the witness observed the defendant at work on a plow stock at the gin house. He saw her, but did not molest her at this time. On her way home from the field, within the next hour, and after she had passed the gin house and reached a point perhaps a hundred yards distant, the defendant, who was then standing on the gin house platform with a hatchet in his hand, hailed her, and told her to stop, as he desired to entrust her with a message to her father. She halted, and when the defendant approached her, he took hold of her and asked her if she could keep a secret. The witness became frightened, ordered him to release her, and asked what he meant. The defendant threw one arm around the waist of the witness, and, with the other over her mouth, carried her to a point near and parallel to the pathway, and laid her on the ground behind a "clump" of bushes, and there, notwithstanding her protests and struggles, had forcible carnal intercourse with her, penetrating her person with his privates, and at the same time holding her head forcibly on the ground.

The witness declared that she did not consent to this carnal knowledge of her, but that the defendant obtained it by force, and despite her weeping, protests and struggles. The operation pained and frightened her very much. When she was released, outraged in feelings and person, she told him that she was going to report his conduct to her father, and he replied that he "was not afraid." She returned home immediately, and reported the transaction to her mother, who examined her person and clothes,

and went immediately to report the matter to the father of the witness.

On cross-examination, the witness testified that she remained at home that evening after the occurrence, and a large part of the next day. She thought she was at school the next day. The operation hurt her, but did not lay her up. She had no doctor with her. She had no recollection of meeting "Aunt Clarissa" either that day or the next, but remembers that Andrew Dean was at the house on the evening of the occurrence. She did not know what he came for. She did not know how the ground looked after the defendant got through with her. The defendant did not follow her after he got through with her. No one was at the gin house but the defendant when the witness passed it going to and returning from the field.

Laura Clark testified, for the State, that she was the mother of the witness Mattie Clark, who was fourteen years old, and had never yet experienced her "monthly sickness." One day in February of 1882 the witness sent Mattie with her father's dinner to the field, a mile distant from the house. On her return, Mattie appeared greatly excited, and her eyes were red from recent weeping. In reply to the witness's inquiries as to the cause of this unusual conduct, Mattie told her that the defendant had been "after her," and explained what had transpired, as she detailed it on the witness stand. The witness examined her, found her clothes ruffled, and her underclothes wet and somewhat stained with blood. Thereupon the witness went to her husband and reported the outrage. The defendant was shortly afterwards arrested and indicted.

Andrew Dean testified, for the defense, that on the evening of the alleged offense, having heard of it, he went to the house of Thad Clark, the father of the witness Mattie, and en route examined the path indicated by Mattie in her testimony. He discovered the tracks of a man and a girl, and to one side, near a thicket, he found a man's track leading from the path to a neighboring tree. He examined the ground for "sign," but found none except a slight disturbance of some leaves near the tree, which could have been made by the toes of a man squatting down. When the witness reached Thad Clark's house he saw Mattie knocking around as usual, except that she appeared somewhat vexed and mad.

On his cross-examination the witness stated that he went to Thad Clark's to see if he could learn anything of the case. Re-

ferring to the man's tracks discovered by him, the witness said
he took them to be the tracks of the defendant. He saw where
they turned out of the path, and trailed them to the clump of
bushes. He saw no tracks of a woman or girl outside of the
path.

Turner Deese, the defendant's brother-in-law, qualified him-
self for the defense, and pronounced Mattie Clark's reputation
for truth and veracity bad.

Clarissa Yarbrough, a niece to the defendant by marriage,
testified, in his behalf, that in company with Turner Deese she
went to the path indicated in the previous testimony, to examine
for "sign" of the alleged outrage. Mattie's track was alone to
be found, no man's track was discovered. The witness protested
that she was in no degree interested in the result of this prose-
cution. Mattie was at her house on the day following the
alleged rape, frolicking with her children "as natural as ever."

Wash. Deese testified, for the defense, that he examined the
hog trail, or path as it was called, for "sign" of the alleged
outrage. He found the defendant's tracks in the trail, but they
nowhere turned out of it. Clarissa Yarbrough, niece to the wit-
ness, was with him, and saw all the tracks that he did. There
was a clump of bushes near the path, and the witness noticed
that the leaves near it had been stirred up a little. The witness
was a brother-in-law to the defendant, but had no interest in the
case or its results.

The opinion sets out substantially the grounds upon which the
motion in arrest of judgment was based. The motion for new
trial assails the charge of the court and the sufficiency of the
evidence.

No brief for the appellant has reached the hands of the Re-
porters.

*O. S. Eaton,* for the State.

WILLSON, J. This is a conviction of the crime of rape under
an indictment the charging portion of which reads as follows:

"That one Alex Cornelius, late of said county, on the fifteenth
day of February, etc., and in said county, etc., did then and
there, in and upon one Mattie Clark, a female, violently and
feloniously make an assault, and her the said Mattie Clark then
and there violently and by force and threats, and against her

will, did ravish and carnally know; contrary to law and against the peace and dignity of the State."

A motion in arrest of judgment was made and overruled. Two objections to the sufficiency of the indictment are set forth in the motion. First, that it is duplicitous and uncertain, in that it charges the offense to be committed by force and threats, instead of stating specifically the mode, as required by law. Second, that it does not charge that the offense was committed by an adult male upon the person of a female, as defined by statute; and because said indictment is otherwise defective.

We think the indictment is in all respects a good one, and in strict compliance with established precedents and repeated decisions of the courts. (*Williams* v. *The State*, 1 Texas Ct. App., 90; *Walling* v. *The State*, 7 Texas Ct. App., 625; *O'Rourke* v. *The State*, 8 Texas Ct. App., 70; *Gutieres* v. *The State*, 44 Texas, 587; *Davis* v. *The State*, 42 Texas, 226; *Clark* v. *The State*, 30 Texas, 448; *Word* v. *The State*, 12 Texas Ct. App., 174.)

Several objections are urged to the charge of the court, but none of them are tenable. As far as we have been able to perceive, it is a fair, correct and comprehensive exposition of the law of the case.

As to the sufficiency of the evidence to support the conviction there is in our minds no doubt, and we find no error in the proceedings or judgment.

The judgment is affirmed.

*Affirmed.*

Opinion delivered January 24, 1883.